UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| BELINDA LAMB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: 1:06-CV-216 |
| | ) | |
| GENERAL ELECTRIC | ) | |
| CONSUMER & INDUSTRIAL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION AND ORDER**

This matter is before the court on the Motion to Dismiss Plaintiff's Complaint and Compel Arbitration filed by the Defendant, General Electric Consumer & Industrial ("GE") on June 20, 2006. Plaintiff Belinda Lamb ("Lamb") filed a response in opposition to the motion on July 10, 2006, and GE filed a reply on July 20, 2006. For the reasons discussed herein, the motion is GRANTED.

**PROCEDURAL POSTURE**

Before addressing the merits of GE's motion, it is necessary to determine exactly what sort of motion is before the court. GE has filed the present motion pursuant to Fed.R.Civ.P. 12, alleging that the case should be dismissed at this early stage because Lamb is required to pursue her claims exclusively through an arbitration process included in an arbitration agreement that she entered into with GE when she was hired. GE does not cite a specific subsection of Rule 12 as the basis for its motion. Rather, it merely states that it is brought "pursuant to Rule 12 of the Federal Rules of Civil Procedure[.]" Motion to Dismiss, Docket at 9, p. 1. GE does not, for example, state that its motion is being brought pursuant to Fed.R.Civ.P. 12(b)(1) (lack of subject-matter jurisdiction) or 12(b)(3) (improper venue) or 12(b)(6) (failure to state a claim

upon which relief can be granted).  Nor did GE bring the motion pursuant to 9 U.S.C. § 3, a provision of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, that provides a procedural tool by which a party seeking to compel arbitration can petition a district court to stay the proceedings in court pending a determination by an arbitrator.[1]  Any of these procedural tools might appear to be proper vehicles by which GE could pursue the present motion.

It is important to characterize GE's motion properly for two reasons.  First, so that the record is clear–not only for purposes this court's ruling, but also in the event that the ruling would later be subject to appellate review.  The second reason is because GE has submitted an exhibit in support of its motion.  The exhibit is the arbitration contract itself, which Lamb signed as a condition of beginning her employment with GE.  Generally, when a court considers evidence outside the pleadings on a motion to dismiss that is brought pursuant to Fed.R.Civ.P. 12(b)(6), it is proper to convert the motion to a summary judgment motion and review it pursuant to the provisions of Rule 56.  Fed.R.Civ.P.12(b)(6).[2]

---

[1] 9 U.S.C. § 3 provides as follows:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

[2]  Even if the present motion was interpreted as one under Rule 12(b)(6), the court could still opt to consider the arbitration contract without converting the motion to a Rule 56 motion, which would needlessly prolong these proceedings.  That is because "the bar on considering matters outside the pleadings is not absolute."  *Continental Gas Co. v. American Nat. Ins. Co.*, 417 F.3d 727, 731 (7th Cir. 2005).  In *Continental Gas*, the Seventh Circuit explained that a trial court may consider "'a limited class of attachments to Rule 12(b)(6) motions' . . . especially when the court must interpret a contract to determine whether the plaintiff stated a claim."  *Id.*

2

In this case, however, the court concludes that the present motion is brought pursuant to Fed.R.Civ.P. 12(b)(1).  Besides citing "Rule 12," GE's motion also states that "Plaintiff's only claim in the present lawsuit is . . . clearly subject to binding arbitration under the Federal Arbitration Act."  Motion to Dismiss, p. 1.  GE asks this court to "dismiss Plaintiff's Complaint in its entirety and compel Plaintiff to pursue her claims against GE via arbitration."  *Id.*  This language implies that the dismissal is being sought pursuant to 12(b)(1), based on an argument that the court has no jurisdiction to entertain Lamb's claim in the first place. GE is not arguing that Lamb fails to state a claim upon which she would be entitled to relief if successful.  Rather, GE is arguing that the present lawsuit should be dismissed because the arbitration agreement Lamb and the company entered into *precludes* her ability to file suit in any court.

The agreement between Lamb and GE specifically states that any Title VII claim that an employee intends to bring against the company is subject to mandatory arbitration.  Defendant's Brief in Support of its Motion to Dismiss Plaintiff's Complaint and Compel Arbitration ("Brief in Support"), Attachment 1–Affidavit of Janice Aurand, Exhibit 1 (Alternative Dispute Resolution Policy Agreement), p. 8 (hereinafter referred to as "Arbitration Agreement").  It also states that the alternative dispute resolution processes outlined in it, including binding arbitration, are "the exclusive means to resolve certain legal claims related to [the employee's] employment."  *Id.*, p. 1.  It goes on to state that if an employee's claims are not resolved before they reach the arbitration stage, then such claims shall be submitted "to arbitration which shall be *final and binding* for both [GE] and [the employee]."  *Id.* (emphasis added).  The agreement

---

(quoting *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002)).

3

states that such arbitration "shall be administered by the American Arbitration Association . . . pursuant to the requirements of the [agreement] and the Association's 'National Rules for the Resolution of Employment Disputes.'" *Id.*  Finally, and perhaps most importantly, the contract expressly states that "employees agree as a condition of employment to waive the right to pursue covered claims in court.  They agree that an arbitrator's award shall be a final, binding, and exclusive determination of their covered claims. . . . [A] former employee agrees to waive the right to file suit in court against the Company and agrees to accept the arbitrator's award as a final, binding, and exclusive determination of all covered claims." *Id.*  This language is clear and unambiguous.  An employee who enters into the agreement is precluded from initiating an employment discrimination claim against GE in federal court.  The agreement is intended as the sole means of initiating, presenting, and resolving employment disputes, including Title VII claims.  As a result, the court interprets GE's present motion to dismiss as being brought pursuant to Fed.R.Civ.P. 12(b)(1).  Lamb's sole and exclusive remedy, according to GE, is the process provided for in the agreement.  This characterization of GE's motion also means that the court may consider the arbitration contract between GE and Lamb when analyzing and discussing the merits of the motion and Lamb's arguments in opposition thereto.[3]

---

[3] The court finds that the provisions of 9 U.S.C. § 3 also do not apply in this case.  First, as set forth above, GE does not cite that section in its motion to dismiss or rely on it in its memorandum.  Second, the Seventh Circuit has determined that a motion to stay proceedings in federal court pending the outcome of an arbitration decision is applicable where an issue arises during the course of litigation in court that is subject to the exclusive jurisdiction of an arbitrator.  *See, e.g., Tice v. American Airlines, Inc.,* 288 F.3d 313, 318 (7th Cir. 2002) (motion to stay was appropriate where federal arbitrator had exclusive jurisdiction to interpret provisions of a collective bargaining agreement, which in turn could be dispositive of plaintiff's pending age discrimination lawsuit).  In the case at bar, the arbitration agreement bars Lamb's federal suit altogether, not just in part, unless she can successfully oppose GE's motion.  Thus, a motion to stay pursuant to 9 U.S.C. § 3 would not be applicable.  Also, subsection (b)(3) of Rule 12 is not

**DISCUSSION**

Having resolved the matter of the procedural posture of this case, the court now turns to the merits of GE's motion and Lamb's opposition to it.

This lawsuit was initiated by the filing of a *pro se* Complaint on May 30, 2006.  Docket at 1.  In her Complaint, Lamb asserts claims of employment discrimination.  Specifically, she alleges that she was the victim of sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.  Id.*, p. 3.  According to her Complaint, Lamb was employed at GE beginning in June of 1999 and was terminated on or about September 28, 2005.  *Id.*, p. 3.  Lamb alleges that she was first told that her position was being eliminated, but that she "later found [out] that the reason for the decision was due to past poor performance." *Id.*  Lamb maintains that her performance was never poor, that she always received excellent performance reviews, and that GE's stated reason for her termination was a pretext for sex discrimination.  *Id.*

As employment discrimination claimants are required to do, Lamb filed a charge of discrimination with the Equal Employment Opportunity Commission.  The EEOC issued Lamb a Dismissal and Notice of Rights letter ("Right to Sue" letter) on February 28, 2006.  *Id.*, Exhibit

---

applicable in this case.  That subsection would apply if the Arbitration Agreement expressly stated that arbitration was to take place in a district other than the Northern District of Indiana.  *See, e.g., Continental Gas*, 417 F.3d 727, supra (trial court properly dismissed case pursuant to Fed.R.Civ.P. 12(b)(3) where contract specifically stated that arbitration would take place in a district other than the one in which the trial court resided).  In the present case, the Arbitration Agreement states that arbitration will take place "within fifty (50) miles of the employee's primary work facility."  Arbitration Agreement, p. 25.  In Lamb's case, that means that arbitration will take place somewhere in this federal district.

5

1.  GE does not contest the fact that Lamb's Complaint in this court was filed timely.

In its motion, GE seeks to compel Lamb to submit her claims to binding arbitration. Motion to Dismiss, p. 1. GE claims that Lamb is bound by the arbitration provisions of the Arbitration Agreement she signed at the outset of her employment with the company. Brief in Support, p. 1. As stated above, GE has submitted a copy of that Arbitration Agreement in support of its present motion. The Arbitration Agreement clearly states that as a new employee, Lamb was agreeing to resolve claims against the company (including, but not limited to, employment discrimination claims) by means of arbitration. *Id.* The Arbitration Agreement was signed by Lamb and dated August 27, 1998. *Id.*, p. 1. Pursuant to the Arbitration Agreement that Lamb signed, GE contends that the present lawsuit must be dismissed and Lamb should be compelled to pursue her claims, should she choose to do so, through an arbitration process.

As stated above, Lamb is proceeding *pro se*. While her brief in opposition to GE's motion was not composed by a lawyer, her arguments are clear. Lamb opposes GE's motion primarily on equitable grounds. She maintains that forcing her to pursue her claims through an arbitration process denies her an opportunity to present her case to a jury and, she states, provides a decided advantage to GE. More specifically, Lamb's arguments in opposition to the motion include the following:

1.  GE never raised the issue of arbitration during the EEOC investigation process and therefore should be denied the ability to so now;

2.  Women and minorities are "disadvantaged by the present mandatory arbitration system"; and

3.  The arbitration process does not allow for "limited judicial review."

6

Response to Motion to [Compel] Mandatory A[r]bitration ("Brief in Opposition"), Docket at 11, pp. 1-4.  Lamb also claims that "[t]he EEOC, members of Congress and the Commissioner of the Securities Exchange Commission have all publicly criticized mandatory arbitration."  *Id.*, p. 3.  Finally, she claims that "GE's mandatory arbitration system include [sic] structural biases against the plaintiff."  *Id.*, p. 4.  These portions of her brief are not legal argument,[4] but can be interpreted as policy arguments in support of her overriding theme that the arbitration process is fundamentally unfair to claimants in her situation.  Lamb does not deny that she signed the Arbitration Agreement.  Rather, she insists that notwithstanding the fact that she signed it, it should not be enforced because it is fundamentally unfair to her for the reasons stated in her brief.

As far as Lamb's general argument that mandatory arbitration is fundamentally unfair and deprives plaintiffs of the full protections afforded by Title VII (including the right to a trial), the Seventh Circuit has addressed this argument directly and rejected it, as have most other circuit courts of appeal.  In *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634 (7th Cir. 1999), the court summarized its holding as follows:

> [Plaintiff] Michalski first asserts that the strong federal policy behind Title VII precludes mandatory arbitration of civil rights claims.  However, this argument was explicitly rejected in this circuit by our decision in *Koveleskie v. SBC Capital Markets, Inc.,* 167 F.3d 361, 365 (7th Cir.1999), in which we held that Congress did not intend Title VII to preclude enforcement of pre-dispute arbitration agreements such as the one used by Circuit City.
>
> In *Koveleskie*, the plaintiff, a securities industry analyst, was required as a

---

[4] Lamb's brief does not contain citation to any authority in support of her arguments.  It does contain a brief "Bibliography" on the last page that cites a Yale Law Journal article, a Wall Street Journal newspaper article, and an "unpublished study" by an "assistant professor at Indiana U. [sic] School of Public & Environmental Affairs."  Brief in Opposition, p. 5.

7

    condition of her employment to sign an agreement to arbitrate all future
    employment disputes, including Title VII discrimination claims.  She challenged
    the enforceability of the pre-dispute arbitration agreement, as it applied to
    employment discrimination claims.  We found, as have most other circuits, that
    Congress did not intend to prohibit the use of pre-dispute arbitration agreements
    for resolution of Title VII claims.  *Id.*; *see also Seus v. John Nuveen & Co.,* 146
    F.3d 175, 182 (3rd Cir.1998); *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832
    (8th Cir.1997) (holding that Title VII claims are subject to pre-dispute arbitration
    agreements under the FAA); *Cole v. Burns International Security Services*, 105
    F.3d 1465 (D.C.Cir.1997) (affirming an order compelling arbitration of Title VII
    claims where an employee signed a mandatory arbitration agreement as a
    condition of his employment); *Metz v. Merrill Lynch, Pierce, Fenner & Smith,
    Inc.*, 39 F.3d 1482 (10th Cir.1994) (holding that Title VII claims are subject to
    mandatory arbitration); *Bender v. A.G. Edwards & Sons, Inc.* 971 F.2d 698 (11th
    Cir.1992) (holding that Title VII claims are subject to securities industry
    compulsory arbitration); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305 (6th
    Cir.1991); *Alford v. Dean Witter Reynolds, Inc*., 939 F.2d 229 (5th Cir.1991)
    (holding that Title VII claims can be subject to compulsory arbitration).

  As for Lamb's first, more specific, argument, that GE never raised the issue of arbitration during the EEOC administrative process, GE responds that it was not required, either by law or by its Arbitration Agreement, to raise the issue while the EEOC process was pending. Defendant's Reply in Support of Motion to Dismiss Plaintiff's Complaint and Compel Arbitration" ("Defendant's Reply"), Docket at 13, p. 2.  GE states that "[a]s a matter of law, the EEOC is 'not bound by individual arbitration agreements because its enforcement authority is not derivative of the legal rights of individuals even when it is seeking to make them whole.'" *Id.* (quoting *EEOC v. Sidley Austin, LLP*, 437 F.3d 695, 696 (7th Cir. 2006)).  Therefore, claims GE, "it would have been futile for GE to have sought to compel arbitration while Plaintiff's charge was pending at the administrative level." *Id.*  Furthermore, GE points out that a provision in its Arbitration Agreement specifically states that "'nothing in [the Agreement] is intended to discourage or interfere with the legally protected rights of employees to file administrative

8

claims or charges with government agencies.'" *Id.* (quoting Arbitration Agreement, p. 6).  It is also true (and GE does not point this out) that the Arbitration Agreement goes on to state that "if an employee files a charge with the EEOC . . . [GE] may request the agency to defer its processing of the charge until the employee and [GE] have completed the [alternative dispute resolution process]." *Id.*  Despite this provision, it is clear that in the present case GE made no such request to the EEOC and the agency completed its administrative review, ultimately issuing to Lamb her right to sue notice.  In light of this, GE maintains that it "acted in accordance with the law, as well as the [Arbitration Agreement], and has done nothing to waive its right to compel arbitration in this matter." *Id.*

GE is correct on this point.  Nothing in the law or its own Arbitration Agreement dictates that GE had to raise the issue of arbitration while the EEOC administrative process was under way.[5]  Accordingly, GE cannot be found to have somehow waived or invalidated the provisions of the Arbitration Agreement on that basis.

Next, Lamb argues that women and minorities are disadvantaged by a mandatory arbitration provision.  She argues that female and minority employees "are all too often confronted with arbitrators who do not share similar life experience and who do not understand

---

[5] In fact, it is more in keeping with the entire EEOC administrative scheme that an employer refrain from asserting a mandatory arbitration provision during the agency's investigation.  The EEOC was created, and continues to exist, for the purpose of reviewing and investigating claims of discrimination in the workplace.  And, the EEOC even has its own alternative dispute resolution program whereby it attempts to resolve some discrimination claims by way of negotiation and/or mediation.  In order to facilitate the intent of Congress in creating the administrative process, it would make sense for employers, even if they have a valid and enforceable arbitration system in place, to refrain from asserting it while the proper administrative agency performs its designated function.  Because of this, it would be counterintuitive for the court to punish GE in this case for failing to raise its mandatory arbitration contract while Lamb's EEOC charge was pending.

9

the dynamics of sexual and racial discrimination." Brief in Opposition, p. 2. Lamb maintains that she would receive a fairer review of her claims if she was able to present them to a jury instead of an arbitrator. *Id.* Again, Lamb does not present any authority in support of this contention (other than the newspaper articles and/or law review articles she refers to in her Bibliography–see footnote 4 above). Her position is an opinion rather than a legal argument. The court is not unsympathetic to Lamb's fear of the arbitration process, which is probably always a somewhat mysterious and misunderstood process to individuals making claims of discrimination. But anxiety or even fear on the part of an employee about the arbitration process and/or the provisions of the Federal Arbitration Act (which governs the Arbitration Agreement provision in this case) does not constitute a basis for declaring a mandatory arbitration contract invalid. The court does not doubt Lamb's sincerity when she states that she feels a jury of her peers would afford her a better opportunity to present her claims, but that preference on her part does not trump an otherwise valid and enforceable arbitration agreement.

In any event, as GE points out, even the U.S. Supreme Court has held that arbitration agreements, including those involving employment discrimination claims, should be encouraged. Reply Brief, p. 2 (citing *Circuit City Stores v. Adams*, 532 U.S. 105 (2001)). In addition, argues GE, the courts have held that "the premise 'that agreements to arbitrate civil rights are unenforceable because they prevent plaintiffs from vindicating their statutory rights' 'has been repeatedly rejected' by the federal courts." *Id.* (quoting *Perdue v. RBC Mortg. Co.*, 156 Fed.Appx. 824, 826 (7th Cir. 2005)). GE goes on to quote from, and cite to, several district court and Seventh Circuit cases that expressly hold that arbitration agreements should be "rigorously enforced." *Id.*, p. 3 (citations omitted). The Seventh Circuit has held that "[courts] must be

10

mindful that the FAA 'is a congressional declaration of a liberal federal policy favoring arbitration agreements' and 'that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.' *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). '[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .' *Id.* at 24-25, 103 S.Ct. 927." *Continental Gas*, 417 F.3d at 730-731.

Therefore, GE's position is correct. The federal courts, including the Supreme Court, have come to embrace and enforce arbitration agreements over the past few decades since they often offer a much more cost-effective and expedient way to resolve disputes and claims, including civil rights claims. Despite Lamb's personal belief that the federal arbitration process is somehow unfair to her or biased towards women and minorities, the courts have held otherwise. For these reasons, Lamb's contention that the arbitration process is unfair to her or deprives her of her opportunity to fairly and adequately present her claims is without a valid foundation, and presents no basis for denying GE's motion.

Lamb's next argument in opposition to GE's motion is that the mandatory arbitration process the company seeks to compel "does not allow for limited judicial review." Brief in Opposition, pp. 2-3. More to the point, Lamb argues that since the process is one of binding arbitration, it "does not allow for any accountability on the part of GE and puts the plaintiff at a serious disadvantage." *Id.*, p. 3.

GE responds by pointing out that the Arbitration Agreement at issue here "expressly provides that an arbitrator's award *is* subject to limited judicial oversight." Reply Brief, p. 4 (citing Arbitration Agreement, p. 29) (italics in original). Specifically, the relevant portion of

the Arbitration Agreement states as follows: "Unless applicable law provides otherwise, the arbitrator's award will not be subject to review or appeal, except as provided by the Federal Arbitration Act, 9 U.S.C.A. Sections 1-14, or by the applicable state arbitration statute."  GE readily concedes that judicial review of a federal arbitrator's binding decision is very limited.  *Id.*, p. 4.  GE points out that the Federal Arbitration Act specifically provides for judicial review of an arbitrator's decision under certain circumstances, as where the decision "'was procured by corruption, fraud, or undue means,'" or where there "'was evident partiality or corruption in the arbitrators,'" or "'where the arbitrators exceeded their powers.'" *Id.* (quoting 9 U.S.C. § 10(a)).  Granted, judicial review of an arbitrator's decision or award is quite limited.  This is because, as GE states in its brief, the integrity and independence of the arbitration process is more adequately protected and assured by limited, rather than broad, judicial review.  *Id.*, p. 4 (citing *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673 (7th Cir. 1983)).   As a result, argues GE, Lamb "has identified no authority in support of the proposition that the agreement she entered into with GE is invalid in the absence of greater judicial intervention."  *Id.*

Finally, GE refutes Lamb's contention that the entire arbitration process places her at a "serious disadvantage" by pointing out that "GE is responsible for all administrative fees associated with arbitration under the [Arbitration Agreement] and . . . a final decision is typically rendered much more expediently via arbitration than traditional litigation." *Id.*  This is a valid point, even though the court believes that Lamb's argument that she will be placed at a "serious disadvantage" is more likely based on her overall apparent feeling that the process is somehow biased in favor of employers.  Nonetheless, it is true that in this case Lamb will not be responsible for the administrative costs of the arbitration proceedings and she may receive a final

12

decision much more quickly than she would if she pursued litigation in federal court. Lamb must also be mindful of the fact that if the arbitrator finds in her favor, GE will also be bound by that decision and will have paid the costs of having it rendered.

In summary, Lamb's opposition to GE's motion to dismiss this lawsuit and compel her to participate in binding arbitration is not persuasive and does not carry the day.[6] The real crux of her opposition is that she feels the arbitration process will be unfair to her or biased against her. But as the court has explained in this Order, while her apprehension may be understandable (especially since she is not presently represented by an attorney who can explain the process to her in a way that might relieve much or all of her anxiety), they do not form a legal basis for denying GE's motion to dismiss. Her reservations about the arbitration process and her desire to "have her day in court" are clear from the language and tone of her brief in opposition to GE's motion. Unfortunately for Lamb, her brief presents no authority to support her position. More importantly, there is a large body of case law addressing just the sort of issues and concerns Lamb has raised, and those arguments have been rejected repeatedly.

While the federal courts have embraced and encouraged arbitration agreements as efficient methods to resolve disputes, that does not mean that they receive a blanket endorsement in every case. In fact, this court refused to grant an employer's motion to dismiss and to compel arbitration in one instance. In *Penn v. Ryan's Steak Houses, Inc.*, 95 F.Supp.2d 940 (N.D.Ind. 2000), the plaintiff was a server at one of the defendant's restaurants. As a condition of his hire,

---

[6] This is not to imply that Lamb carried the burden with respect to the present motion. The party seeking to enforce an arbitration agreement bears the burden of establishing that a valid and enforceable arbitration contract exists. *See, e.g., DeGroff v. MascoTech Forming Technologies, Inc.*, 179 F.Supp.2d 896 (N.D. Ind. 2001). GE has met that burden in this case for all the reasons discussed in this Order.

13

he was asked to sign an arbitration agreement. He eventually sued the company, alleging violations of the Americans With Disabilities Act. The company moved to dismiss his lawsuit and asked the court to enforce the arbitration contract it had entered into with Ryan. In that case, this court refused to do so, concluding that the contract was so illusory and one-sided that it should not be enforced. Among other things, the contract forced Penn to accept a third-party company called EDS, who was on retainer with Ryan's, to provide the arbitration services and to set all the rules and parameters applicable to the process. The Seventh Circuit affirmed this court's decision, reasoning as follows:

> As we have already observed, this case differs from the typical case in which an employer and employee agree to arbitrate their disputes because of the complicated three-party approach by which Ryan's sought to bind Penn to arbitration. Although Penn obviously was motivated to sign the arbitration agreement because Ryan's otherwise would not have considered him for employment, the contract that Penn signed underscores that it is between Penn and EDS and that Ryan's is *not* a party to the contract. . . . The first question is therefore whether the Penn EDS contract contains mutual promises and commitments by each party to the other.
>
> We conclude that it does not; to the contrary, the arbitration agreement between EDS and Penn contains only an unascertainable, illusory promise on the part of EDS. The agreement is clear enough as to what Penn is promising: he agrees that he will bring any employment-related dispute that he has with Ryan's in the EDS arbitration forum and not in state or federal court. . . . In marked contrast to the specificity of Penn's obligation is the language describing the consideration EDS is obligated to provide Penn in return: EDS commits itself only "to provide an arbitration forum, Rules and Procedures, and a hearing and decision based on any claim or dispute" that the employee might raise. Nothing in the contract provides any details about the nature of the forum that EDS will provide or sets standards with which EDS must comply; EDS could fulfill its promise by providing Penn and Ryan's with a coin toss. . . . The contract is therefore hopelessly vague and uncertain as to the obligation EDS has undertaken.

*Penn v. Ryan's Steak Houses, Inc.*, 269 F.3d 753, 759-60 (7th Cir. 2001) (internal citation omitted).

14

But the arbitration agreement at issue in the present case is a very different creature.  It provides that the arbitration process will be administered by the American Arbitration Association ("AAA") pursuant to the rules and regulations contained in the Federal Arbitration Act.  Brief in Support, Exhibit 1, p. 12.  It affords GE as well as Lamb the ability to have input into the choice of arbitrators, and if they are unable to agree to an arbitrator, the AAA is to provide a list of qualified individuals (including "culturally diverse arbitrators") from which the parties can choose.  *Id.*, p. 23.  It provides for a discovery process and the disclosure of witnesses and exhibits.  *Id.*, p. 24.  Perhaps most importantly the contract also protects all of Lamb's remedies under Title VII, since it provides that "the arbitrator may grant any remedy or relief that would have been available had the claim been asserted in court."  *Id.*, p. 29.  GE's obligations under the contract are not illusory or one-sided, as was the situation in *Penn*.  The Seventh Circuit has held that courts should not presume, absent concrete proof to the contrary, that arbitration systems will be unfair or biased. *Penn,* 269 F.3d at 758 (citing *Green Tree Financial Corp. v. Randolph,* 531 U.S. 79, 91-92, 121 S.Ct. 513 (2000)).  No such evidence of intrinsic unfairness or bias is present in the GE arbitration plan at issue in this case.  And the fact that Lamb believes that she will be disadvantaged by having to arbitrate her claim rather than litigating it in federal court does not render the agreement void or voidable.  "A contract is unconscionable when there is a great disparity in bargaining power that leads the weaker party to sign an agreement unwillingly or unaware of its terms, or when an agreement is one that 'no person not under delusion, duress or in distress would make,' or one that 'no honest and fair [person] would accept.'"  *Flynn v. Aerchem, Inc.,* 102 F.Supp.2d 1055, 1062 (S.D. Ind. 2000) (quoting *Houin v. Bremen State Bank,* 495 N.E.2d 753, 758 (Ind.Ct.App. 1986)).  Consequently,

15

a contract is not unenforceable merely because one party arguably has some sort of advantage. *Flynn,* 102 F.Supp.2d at 1062.

In fact, very soon after the Seventh Circuit's decision in *Penn*, this court upheld an arbitration contract in the employment context. In *DeGroff v. MascoTech Forming Technologies of Fort Wayne, Inc.,* 179 F.Supp.2d 896 (N.D. Ind. 2001), Magistrate Judge Roger Cosbey granted the defendant employer's motion to dismiss and to compel arbitration, based largely on the fact that the arbitration agreement at issue in that case protected the plaintiff's rights and remedies under Title VII. *See DeGroff*, 179 F.Supp.2d at 907-08. The present case is similar to the situation in *DeGroff* and dissimilar to the one in *Penn*. For all of these reasons, GE's motion to dismiss this case will be granted.

In its motion to dismiss, GE also asks the court "to compel Plaintiff to pursue her claims against GE via arbitration." Motion to Dismiss, p. 1. While GE does not provide citation to authority in support of this requested relief, it is found in the FAA itself at 9 U.S.C. § 4, which states in relevant part that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court [which would otherwise have jurisdiction over the case] for an order directing that such arbitration proceed in the manner provided for in such agreement." This means, as the Seventh Circuit has explained, that when a district court finds that an enforceable arbitration agreement exists, and the claim at issue is one that is subject to that agreement, "the courts will use the [FAA] to enforce agreements to arbitrate." *Galt v. Libbey-Owens-Ford Glass Co.*, 376 F.2d 711, 714 (7th Cir. 1967); *See also, OCMC, Inc. v. Billing Concepts, Inc.*, 2006 WL 1234884 (S.D. Ind., May 3, 2006) ("Under the [FAA], a court may compel a party to arbitrate a dispute if

16

the court finds a written agreement to arbitrate, a dispute within the scope of that agreement, and a refusal to arbitrate[.]") (citing *Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005)); *Castle & Cooke Madera, Inc. v. Mackenzie Patterson Fuller, Inc.*, 2006 WL 1233125 (N.D. Cal., May 8, 2006) (order to arbitrate must issue if court finds enforceable written arbitration agreement and failure to comply) (citing 9 U.S.C. § 4).  Accordingly, Lamb and GE are hereby ordered to arbitrate Lamb's claim pursuant to the Arbitration Agreement and the provisions therein.

## CONCLUSION

For all the reasons discussed herein, the Motion to Dismiss Plaintiff's Complaint and Compel Arbitration filed by the Defendant, General Electric Consumer & Industrial, is GRANTED.

SO ORDERED.

Date: August 3, 2006.

   /s/   William C. Lee
William C. Lee, Judge
United States District Court